**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **ADVANCED VASCULAR ASSOCIATES** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | **NO. 26-2859** |
| | : | |
| **INDEPENDENCE BLUE CROSS** | : | |

# MEMORANDUM

**MURPHY, J.** **September 28, 2026**

Federal law provides a process for insurers and out-of-network medical providers to resolve billing disputes before a neutral third party. For the medical provider, the easy part is getting a binding determination that obligates the insurer to pay. The hard part is getting the insurer to actually pay. In this case, a medical provider alleges that it obtained an award through the federal process, but the insurer refuses to pay. Seeking to enforce the award, the medical provider sued the insurer in Pennsylvania state court under state law. The insurer removed the case to federal court, arguing that we have jurisdiction over the state law claims because they are based on the result of the federal dispute resolution process. But because any federal issue in this case is not actually disputed, we disagree and remand to state court.

## I. BACKGROUND

Plaintiff Advanced Vascular Associates is a Pennsylvania medical provider that specializes in vascular surgery. DI 1-1 ¶¶ 1, 10. It alleges that between April 2024 and April 2025, it provided medical treatment to four people who were insured by defendant Independence Blue Cross, a company with its principal place of business in Pennsylvania. *Id.* ¶¶ 2, 11-12, 25-26, 39-40, 53-54. Advanced Vascular is an out-of-network provider for those insured by Independence. *See id.* ¶¶ 13, 27, 41, 55. Advanced Vascular alleges that, after providing the

services, it submitted claims to Independence seeking payment for the services rendered but that Independence refused to pay the amounts owed in full. *Id.* ¶¶ 15-17, 29-31, 43-45, 57-59.

Congress, in the No Surprises Act (NSA), provided an avenue to resolve these kinds of disputes. Under the NSA, if the insurer and out-of-network provider cannot resolve the dispute after a 30-day negotiation process, one of them may commence an Independent Dispute Resolution (IDR) proceeding. 42 U.S.C. § 300gg-111(c)(1)(A)-(B). This process involves either the parties or the Department of Health and Human Services selecting a certified independent dispute resolution entity (CIDRE) to determine the amount the insurer owes the provider. *Id.* § 300gg-111(c)(4)-(5). Unless there is evidence of a fraudulent claim or misrepresentation of facts to the CIDRE, the IDR award is "final and binding" and payment "shall be made" to the provider within thirty days of the determination of the award. *Id.* §§ 300gg-111(c)(5)(E)(i)(I), 300gg-111(c)(6).

Here, Advanced Vascular alleges that it initiated the IDR process after it could not reach an agreement with Independence, resulting in the CIDRE ultimately issuing awards in its favor. DI 1-1 ¶¶ 18, 21, 32, 35, 46, 49, 60, 63. But months later, Advanced Vascular alleges, Independence still refuses to pay the awards. *Id.* at ¶¶ 23, 37, 51, 65. So Advanced Vascular sued Independence in Pennsylvania state court. It raised four claims under Pennsylvania law. *Id.* at 16-20.[1] The first claim sought a declaration that Independence needed to pay the IDR awards. *Id.* at 16. The other claims — account stated, quantum meruit, and unjust enrichment — all directly sought payment of the awards. *See id.* ¶ 99(a).

Independence timely removed the case to federal court. DI 1 ¶¶ 7-8. Its theory of

---

[1] We adopt the sequential pagination of the CM/ECF filing system.

removal is that this case "arises under" federal law because it is premised on the federal NSA's dispute resolution process. *Id.* at 4.

## II. MOTION AT ISSUE

Advanced Vascular moves to remand this case to Pennsylvania state court, arguing that we lack subject-matter jurisdiction. DI 10-1 at 7. It argues that Independence's "arising under federal law" theory fails because Advanced Vascular brings only Pennsylvania state law claims. *Id.* It further argues that those claims do not necessarily raise disputed and substantial issues of federal law and cannot be decided without disrupting the federal-state balance of courts. *Id.* at 11-24. Thus, Advanced Vascular argues, the requirements for federal jurisdiction over state law claims laid out in *Gunn v. Minton*, 568 U.S. 251 (2013) and *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308 (2005) are not met. DI 10-1 at 11-24. Advanced Vascular also asks for payment of costs associated with the remand litigation under 28 U.S.C. § 1447(c), arguing that Independence had no objectively reasonable basis for removal. DI 10-1 at 24-25.

Independence opposes remand. DI 14. It argues that the entire premise of Advanced Vascular's lawsuit is that the IDR payments are binding under federal law, and that this lawsuit is thus an attempt to enforce a federal law. *Id.* at 7-8. Independence further argues that there are federal questions regarding whether the NSA preempts the state law causes of action at issue. *Id.* at 20-21. Independence urges that the case is removable under *Grable/Gunn* because there are essential federal questions that are actually disputed, substantial, and capable of resolution without disrupting the federal-state balance struck by Congress. *Id.* at 7-8. Independence opposes any award of costs, arguing that it properly removed the case to federal court. *Id.* at 26-27.

## III. LEGAL STANDARDS

Unless otherwise provided by statute, a defendant may remove to federal court "any civil action brought in a State court of which the district courts of the United States have original jurisdiction[.]" 28 U.S.C. § 1441(a). Here, the only plausible basis for original jurisdiction is federal question jurisdiction, which is present for all civil actions "arising under" federal law. 28 U.S.C. § 1331. Where, as here, a plaintiff brings only state law claims, there is federal question jurisdiction only if those claims present a federal issue that is "(1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn*, 568 U.S. at 258.

Under the "well-pleaded complaint" rule, an anticipated federal defense to a state law claim will generally not give rise to federal question jurisdiction. *Pryzbowski v. U.S. Healthcare, Inc.*, 245 F.3d 266, 271 (3d Cir. 2001). Thus, "[o]rdinarily, a defense of federal preemption does not provide a basis for removal . . . ." *Maglioli v. All. HC Holdings LLC*, 16 F.4th 393, 407 (3d Cir. 2021). But there is an exception for "complete preemption," which occurs when Congress "so completely pre-empt[s] a particular area that any civil complaint raising [the] select group of claims is necessarily federal in character." *Id.* (quoting *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 63-64 (1987)).

The removing party has the burden of persuasion to show that federal jurisdiction exists. *Boyer v. Snap-on Tools Corp.*, 913 F.2d 108, 111 (3d Cir. 1990). That means the removing party must establish the facts supporting federal jurisdiction, to the extent they are disputed. *See Judon v. Travelers Prop. Cas. Co. of Am.*, 773 F.3d 495, 503 (3d Cir. 2014), *superseded by statute on other grounds*, Federal Courts Jurisdiction and Venue Clarification Act of 2011, Pub.

L. No. 112-63, 125 Stat. 758. As to the law, however, we have an independent duty to determine the presence or absence of jurisdiction regardless of the arguments advanced by the parties. *Hartig Drug Co. Inc. v. Senju Pharm. Co. Ltd.*, 836 F.3d 261, 267 (3d Cir. 2016). We cannot accept any legal concession by a party that would bear on the presence or absence of federal jurisdiction. *Id.*; *Guerra v. Consol. Rail Corp.*, 936 F.3d 124, 131 (3d Cir. 2019).[2]

## IV. DISCUSSION

### A. We will remand this case to state court.

To invoke federal jurisdiction, Independence must, among other things, show that Advanced Vascular's complaint raises a federal issue that is "actually disputed." *Gunn*, 568 U.S. at 258. Independence argues that there are four such issues. But for the reasons discussed below, they are all either undisputed or state law issues.

*First*, Independence argues there is an actual dispute whether "federal IDR payment determinations are binding and subject to payment under federal law in a manner that also creates enforceable state law payment obligations." DI 14 at 20. Embedded within this proposed federal issue are two questions: (1) whether IDR determinations are binding and subject to payment under federal law, and (2) if so, whether federal IDR awards create state law obligations. The former is a federal issue, but it is not actually disputed. The NSA is clear that the payments are binding and subject to payment under federal law: IDR determinations "shall

[2] We note that our obligation to independently assess jurisdiction is particularly important where, as here, a portion of plaintiff's brief in support of remand appears to have been borrowed from another matter without appropriate revisions. *See* DI 10-1 at 7-8 (referring to courts in the Southern District of New York as "this Court" and erroneously suggesting that we would apply New York law to plaintiff's Pennsylvania claims). Counsel for plaintiff is reminded of their obligation to ensure the accuracy of all filings submitted to this Court.

be binding upon the parties involved" in the absence of fraud or misrepresentation, 42 U.S.C. § 300gg-111(c)(5)(E)(i)(I), and payment "shall be made directly to the nonparticipating provider . . . not later than 30 days after the date on which such a determination is made," *id.* § 300gg-111(c)(6). Independence does not "contest[] the existence, applicability, or construction of th[is] statute[]," so the former issue is not actually disputed. *Goldman v. Citigroup Glob. Markets Inc.*, 834 F.3d 242, 257 (3d Cir. 2016); *see* DI 14 at 14 (conceding that IDR determinations are binding for qualified services in the absence of fraud or misrepresentation without suggesting this case involves non-qualified services, fraud, or misrepresentation). As for the latter issue, it is not a federal question. What consequences, if any, that state law attaches to a person's obligations under federal law is a question of state law. *See Grable*, 545 U.S. at 318-19; *Merrell Dow Pharm. Inc. v. Thompson*, 478 U.S. 804, 811-12 (1986).

*Second*, Independence argues that the question whether its "failure to move to vacate the payment determinations under the NSA's incorporated portions of the [Federal Arbitration Act] implies assent or agreement to pay under an account stated theory" presents a disputed federal issue. DI 14 at 19. But whether Independence's failure to seek vacatur of an undisputedly binding federal-law obligation also gives rise to liability under Pennsylvania's account-stated doctrine is likewise a question of Pennsylvania law. *See Grable*, 545 U.S. at 318-19; *Merrell Dow*, 478 U.S. at 811-12.

*Third*, Independence argues that there is a disputed federal issue whether "the federal IDR payment determinations are binding, such that they supply the legally cognizable measure of reasonable value for state law quantum meruit." DI 14 at 19-20. This issue presents no actual dispute about federal law for reasons similar to the first two: there is no dispute that IDR

determinations are binding as a matter of federal law, and whether Pennsylvania law provides for a quantum meruit cause of action to recover federally binding IDR awards is a question of state law.

*Fourth*, Independence argues that there is a disputed question whether the "NSA does not preempt state law unjust enrichment claims to enforce [] IDR payment determinations." DI 14 at 20. While that federal issue may be disputed, it is not presented by the well-pleaded allegations in Advanced Vascular's complaint. In general, an anticipated preemption defense to a state law claim is not considered presented by the complaint, so any disputed issues with respect to a preemption defense cannot serve as a basis for removal. *Maglioli*, 16 F.4th at 407. There is a limited exception for a "complete preemption" defense. *See Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 7-8 (2003). This defense applies when federal law "provide[s] the exclusive cause of action for the claim asserted and also set[s] forth procedures and remedies governing that cause of action." *Id.* at 8. Here, the parties agree, and the weight of authority suggests, that there is no federal cause of action to enforce IDR awards. *E. Coast Adv. Plastic Surgery, LLC v. Cigna Health and Life Ins. Co.*, — F.4th —, 2026 WL 2751786, at *4 (2d Cir. Sept. 17, 2026); *Guardian Flight, L.L.C. v. Health Care Serv. Corp.*, 140 F.4th 271, 274 (5th Cir. 2025); DI 14 at 14-15. If a federal cause of action does not exist, it obviously cannot serve as the sole cause of action that excludes any state-law cause of action.

Even if the NSA did provide a federal cause of action to enforce IDR awards, as some courts have held, *e.g.*, *PHI Health, LLC v. Optimum Choice, Inc.*, 2026 WL 850453, at *660 (D. Md. Mar. 27, 2026), it would not be exclusive of complementary state law causes of action. The NSA has none of the features of federal statutes that have been found to completely preempt

state law causes of action. It has no "express federal remedy," and there is no apparent legislative history that "unambiguously described an intent to treat" state law actions to enforce IDR payments as arising under federal law. *See Beneficial Nat. Bank*, 539 U.S. at 7-8. Nor does the NSA set forth "procedures and remedies governing th[e] cause of action" for enforcement of IDR awards. *See id.* at 8. To the contrary, the NSA provides no express mechanism for enforcing the awards, instead specifying only the procedures for vacating them. *E. Coast Adv. Plastic Surgery*, — F.4th —, 2026 WL 2751786, at *4 (citing 29 U.S.C. § 1185e(c)(5)(E)(i)(II)).[3]

**B. We decline to impose costs.**

We have broad discretion to authorize costs, including attorneys' fees, against the removing party when remanding a case to state court. *Prime Healthcare Services - Lower Bucks, LLC v. Cigna Health and Life Ins. Co.*, 699 F. Supp. 3d 343, 351 (E.D. Pa. 2023). But "[a]bsent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005). Here, while Independence's arguments for removal were not persuasive, we do not find its positions sufficiently unreasonable to warrant a costs award. The proper mechanism for enforcing IDR awards is a developing area of the law, and Advanced Vascular's complaint repeatedly references federal law. Moreover, we have identified no directly on-point authority from this district, the Third Circuit, or any federal court of appeals

[3] In holding that any preemption defense does not give rise to removal jurisdiction, we express no opinion on the merits of any such defense. After all, "even an 'obvious' pre-emption defense does not, in most cases, create removal jurisdiction." *See Metro. Life*, 481 U.S. at 66. Independence's preemption arguments must be made, if at all, in state court.

discussing whether state law claims based on IDR awards are removable to federal court. We thus decline to impose costs on Independence.

## V. CONCLUSION

Advanced Vascular's state law claims do not give rise to any actually disputed question of federal law. Accordingly, we lack jurisdiction and **GRANT** Advanced Vascular's motion to remand. In our discretion, we decline to award costs.